## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **TERESA VINSON,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 7:17-CV-00769-RDP |
| **NANCY A. BERRYHILL,** | } |
| **Acting Commissioner of Social Security,** | } |
| **Defendant.** | } |

### MEMORANDUM OF DECISION

Plaintiff Teresa Vinson[1] ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") to deny her claim for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be reversed and remanded under Sentence Four of 42 U.S.C. § 405(g).

**I.      Proceedings Below**

Plaintiff filed her applications for DIB and SSI on September 24, 2013, alleging disability beginning December 31, 2007. (Tr. 134). The Social Security Administration ("SSA") initially denied her application on November 22, 2013. (Tr. 14). Thereafter, Plaintiff filed a written request for a hearing by an Administrative Law Judge ("ALJ"). (*Id.*). On April 30, 2015, ALJ Ronald Reeves held a video hearing. (*Id.*). Plaintiff appeared in Tuscaloosa and the ALJ presided over the

---

[1] At the time of her administrative hearing, Plaintiff's legal name was Teresa Ann Long. (Tr. 32, 68). Plaintiff has since remarried and her legal name is now Teresa Vinson. (Tr. 33-34, 68).

hearing from Birmingham. (*Id.*). On August 18, 2015, the ALJ determined that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act. (Tr. 11).

On March 7, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ decision. (Tr. 1–3). Following that denial, the final decision of the Commissioner became a proper subject of this court's appellate review. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (finding the ALJ decision final for purposes of judicial review when the Appeals Council denied review).

**II.     Facts**

Plaintiff was fifty years old at the time of the ALJ's decision. (Tr. 14, 23). She has a high school education and communicates in English. (Tr. 23, 165). Her previous work experience includes dispatch and payroll work for a trucking and construction company. (Tr. 33, 165).

Plaintiff stopped working on December 31, 2007 because she "was always in chronic pain" and "my husband wanted me to travel with him on his job." (Tr. 164). She was injured when a tornado picked her up in her vehicle and threw her into a tree 200 yards away. (Tr. 215, 231-61, 454). Plaintiff was admitted to the hospital and treated for multiple injuries, including a left acetabular fracture, pelvic ring injury, bilateral tibia-fibula fractures, and posterior sacroiliac disruptions, and subsequently underwent eight major surgeries. (Tr. 20, 233). Follow up medical visits revealed proper hardware placement and healing fractures. (Tr. 265-73).

In May 2003, Plaintiff reported increasing left hip pain "to the point where she [could] hardly ambulate over the past three months and sleeps minimal amounts and requires narcotics for pain control." (Tr. 277). After conservative treatments failed, Plaintiff underwent a left hip arthroplasty with removal of hardware. (Tr. 20, 274). After surgery, X-rays showed good position

of the hardware. (Tr. 20, 278). On July 1, 2003, Plaintiff returned to the orthopedic surgeon who reported that:

> She has progressed her weightbearing and for the most part has not been using any assistive devices. She is complaining of no pain in her hip. She has had some ongoing pain in different areas of her pelvis related to her multi trauma. She states that she is limited now in terms of her ambulation only by becoming tired, but she is basically able to walk as far as she needs to. She is able to do stairs with a railing. She is able to put on her socks and shoes with ease. She is able to sit comfortably for only half an hour but attributes this to her other pelvic fractures and not so much to her hip.

(Tr. 284). Plaintiff was encouraged not to miss follow-up appointments because of the risk of dislocation.

In January 2006, Plaintiff fell in the shower and experienced pain in her entire lower body. (Tr. 20, 286). Diagnostic tests showed that Plaintiff had no hardware failure or loosening in her left hip and no abnormalities in her right hip. (Tr. 20, 294). Additionally, there was no acute fracture or dislocation of her left femur, left knee, pelvis, or left tibia or fibula, and no evidence of deep vein thrombosis in the left lower extremity. (Tr. 20, 290-295). However, Plaintiff reported severe pain in the posterior part of her left knee, and pain with motion in the left thigh and hip. (Tr. 286).

Plaintiff was treated in the emergency room on several occasions from 2008 to 2012 for various common maladies, including a urinary tract infection, hernia, gastrointestinal upset, chest pain, and headaches. (Tr. 303-407). During these visits to the ER, Plaintiff consistently reported both chronic back and pelvic pain and was treated for such. (Tr. 304, 311, 342, 345, 347-49, 375, 377, 380).[2] She was noted to be taking chronic pain medications at home. (*Id.*).

---

[2] The ALJ incorrectly stated that "during emergency room visits and hospitalizations from 2008 to 2012, the claimant did not report intractable pain and was not treated for such." (Tr. 21-22). However, the record indicates that Plaintiff reported chronic back and pelvic pain on each of these visits. (Tr. 333, 375). During her most recent ER visit in January 2012, doctors treated Plaintiff's chronic pain with morphine and Dilaudid. (Tr. 310, 311).

3

Between January 2010 and August 2013, Plaintiff received pain management services from Dr. Barnett, who administered injections and prescribed her narcotic pain medications. (Tr. 412-36). During these examinations, Dr. Barnett noted that Plaintiff walked with a significant limp with restricted range of motion to the right hip. (Tr. 412, 417, 459-60). He also noted that Plaintiff had tenderness in her lumbosacral spine and a loss of sensation in her left foot. (Tr. 412, 417, 460). She was diagnosed with joint pain pelvis, lumbago, pain in limb, and spinal enthesopathy. (Tr. 20). Dr. Barnett continued similar treatment through January 2015 and noted the same findings on examination. (Tr. 459-70).

Plaintiff underwent consultative examination in November 2013. (Tr. 21, 454-57). At the examination, Plaintiff reported "constant severe pain particularly in her left hip" and "significant difficulty standing and walking." (Tr. 454). She also noted neuropathy in her feet and anxiety regarding her health problems. (*Id.*). Dr. Hutto noted that Plaintiff "got on and off the examination table with assistance and up and out of the chair with moderate difficulty." (Tr. 456). He noted that Plaintiff had decreased range of motion in multiple joints, particularly in her hips, with motor weaknesses in her bilateral lower extremities and multiple surgical and traumatic scars throughout both lower extremities, consistent with her history of "extensive prior trauma." (Tr. 456-457). Dr. Hutto also stated that Plaintiff had limitations in her gait, specifically that it was "mildly antalgic on the left." (Tr.456).

In a treating physician assessment completed in April 2015, Dr. Barnett stated that Plaintiff experiences "severe" pain on a daily basis lasting at least two hours. (Tr. 474). The assessment stated that Plaintiff exhibits objective signs that support her claims of pain, specifically X-ray/MRI/CT data and sensory deficit or motor disruption. (*Id.*). Dr. Barnett further noted that physical exertion such as pushing, lifting, or carrying would exacerbate Plaintiff's condition such

that she would be unable to perform any work on a sustained basis. (*Id.*). Additionally, he stated that Plaintiff would require a break once an hour for ten minutes or more in order to work. (*Id.*).

At Plaintiff's April 2015 hearing, the vocational expert ("VE") testified that there are no jobs a person similarly situated to Plaintiff could work if she needed such frequent rest breaks. (Tr. 55). The VE also testified that there are no jobs for such a person if she were unable to push, pull, carry, or lift. (*Id.*). Plaintiff testified that she continues to see Dr. Barnett for pain management every three months. (Tr. 35). She testified that when she was released from UAB following her surgeries, doctors told her to never lift more than ten pounds and that she would probably never be able to walk more than a block. (Tr. 36-37). Plaintiff claims that she cannot walk one block without stopping. (*Id.*). Additionally, she testified that she was told to never perform activities such as riding a horse or roller skating. (*Id.*). Though she used a wheelchair and crutches when she was first injured, Plaintiff stated that she now uses a cane when she is "having a bad day." (Tr. 37-38). With regard to her mobility, Plaintiff testified that she can never sit for more than 20 to 30 minutes without "squirming," and can stand in one place for five to ten minutes. (Tr. 44-45). Plaintiff further testified that she has muscle and bone pain and has "never had five seconds of my life without graphic pain since the day the tornado picked me up." (Tr. 38). Specifically, Plaintiff alleges that her pain is never below a seven on a ten-point scale. (Tr. 48).

**III. ALJ Decision**

The Act uses a five-step sequential evaluation process to determine a claimant's disability. 20 C.F.R. §404.1520(a) and 416.920(a). Here, the ALJ determined that Plaintiff met the insured status requirements of 20 C.F.R. §§216(i) and 223 of the Act through December 31, 2012. (Tr. 14). Nevertheless, the ALJ determined that Plaintiff is not entitled to benefits under the 5-step sequential evaluation process. (Tr. 25).

5

In the first step, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §404.1520(b) and 416.920(b). Substantial gainful activity ("SGA") is work done for pay or profit that requires significant physical or mental activities. 20 C.F.R. § 404.1572(a-b) and 416.972(a-b). If the claimant has employment earnings above a certain threshold, the ability to engage in substantial gainful activity is generally presumed. 20 C.F.R. § 404.1574, 404.1575, 416.974, and 416.975. If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability, regardless of a medical condition or age, education, and work experience. 20 C.F.R. §§ 414.1520(b) and 416.920(b). Here, however, Plaintiff has not engaged in SGA since the alleged onset date of December 31, 2007. (Tr. 16).

Second, the ALJ must determine whether the claimant has a medically-determinable impairment that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1420(c) and 416.920(a)(4)(ii). Absent such impairment, the claimant may not claim disability. (*Id.*). Here, the ALJ found that Plaintiff suffers from the following combination of severe impairments: obesity, status post multiple lower extremity fractures with surgical repair, left hip total arthroplasty, lumbar degenerative disc disease, and osteoarthritis. (Tr. 16).

Third, the ALJ must determine whether the claimant's impairment meets or functionally equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If the criteria for impairment is met or functionally equivalent, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or functionally equals the severity of a Listing. (Tr. 18).

If the impairment is not met or is not functionally equivalent to a Listing, the ALJ assesses the claimant's residual functional capacity ("RFC") to perform, given their impairment, in a work setting. 20 C.F.R. §§404.15245(a)(1) and 416.920(a)(1). The RFC is based on medical and other evidence in the record. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). At this step, the ALJ gave "significant weight" to the findings of DDS examiners and "little weight" to the findings of Dr. Barnett, Plaintiff's treating physician. (Tr. 21). Specifically, the ALJ determined that the form completed by Dr. Barnett was "apparently completed in contemplation of the disability hearing" and "not consistent with the treatment records or the report of the consultative physical examiner." (Tr. 21).

The ALJ ruled that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 419.967(b), except that Plaintiff:

> Cannot lift and carry more than ten pounds and cannot walk more than one block at a time. She cannot climb ladders, ropes, or scaffolds and cannot perform work around workplace hazards. She can occasionally climb ramps and stairs, kneel, and crawl. She can frequently balance, stoop, and crouch. She cannot perform work in environments of concentrated exposure to fumes, dust, odors, gases, or poor ventilation, etc. She cannot perform work in concentrated exposure to extreme cold temperatures or vibration.

(Tr. 19).

Next, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is not disabled. (*Id.*). Here, the ALJ found that with Plaintiff's RFC, she is not able to perform past relevant work. (Tr. 23).

Because the ALJ found the claimant unable to perform past relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). In this step, the ALJ determines whether the claimant is able to perform any other work in the national

7

economy that is commensurate with their RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Although the claimant must still prove disability, at this point the burden of production shifts from the claimant to the ALJ. The ALJ must provide evidence, in significant numbers, of jobs in the national economy that claimant can do, given their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.912(g), and 416.960(c). Here, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 24). In particular, the ALJ found that Plaintiff's RFC would allow her to perform the requirements of occupations such as marker, cashier, and document preparer scanning. (Tr. 24-25). Consequently, the ALJ determined that Plaintiff was not disabled. (Tr. 25).

IV. **Plaintiff's Arguments for Remand or Reversal**

Plaintiff presents four distinct arguments in support of reversing the ALJ decision. First, Plaintiff argues that the "ALJ erroneously gave 'significant weight' to the opinion of a state agency 'single decision maker' as if it were a medical opinion." (Pl. Br., Doc. #8 at 2). Second, Plaintiff claims that "the opinions of non-examining state agency physicians are not substantial evidence upon which an ALJ may base an RFC finding." (*Id.* at 4). Third, Plaintiff claims that the "ALJ's decision to reject the treating physician's opinion and the claimant's testimony was contrary to the law and was unsupported by substantial evidence." (*Id.*). Finally, Plaintiff argues that the "ALJ's findings about the Plaintiff's residual functional capacity are unsupported by substantial evidence." (*Id.* at 13). Each of these arguments is considered below.

V. **Standard of Review**

Judicial review of disability claims under the Act is limited to two questions: (1) whether the record reveals substantial evidence to sustain the ALJ's decision; and (2) whether the correct legal standards were applied. 42 U.S.C. §405(g); *see Wilson v. Barnhart*, 284 F.3d 1219, 1221

(11th Cir. 2002). If the Commissioner's findings are supported by "substantial evidence," they are conclusive. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See id.* (citing *Bloodsworth v. Heckler*, 703 F..2d 1233, 1239 (11th Cir. 1983)). If supported by substantial evidence, the Commissioner's factual findings *must* be affirmed, even if the record suggests otherwise. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added). Nevertheless, while the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Legal standards are reviewed de novo. *Moore*, 405 F.3d at 1211.

VI.     **Discussion**

For the reasons explained below, the court finds that the decision of the Commissioner is due to be reversed and remanded.

**A. The ALJ Erred in Giving Significant Weight to the Opinion of a State Agency "Single Decision Maker."**

Plaintiff argues that the ALJ erroneously gave significant weight to the opinion of the state agency single decision maker in determining Plaintiff's RFC. (Pl. Br., Doc. #8 at 2). Specifically, Plaintiff contends that there is no medical opinion supporting the ALJ's RFC finding that Plaintiff can perform light work, and thus that it was not harmless error for the ALJ to give the single decision maker's opinion significant weight. (*Id.* at 3).

Plaintiff's contention that the ALJ's RFC finding is unsupported by medical evidence is based on the disability determination conducted by two DDS examiners, Robert Estock, M.D. and

9

Marsha Cameron, each of whom evaluated Plaintiff's claim of disability. (Tr. 74-76, 83, 85, 87, 88). Plaintiff claims that Dr. Estock solely addressed her mental impairments (omitting mention of physical impairments), while Cameron, a non-medical disability specialist, completed the entirety of the physical assessment. (Pl. Br., Doc. #8 at 2-3). It is unclear from the record whether Plaintiff's contention is accurate. Exhibit 1A, the Psychiatric Review Technique, was signed and dated by Dr. Estock. (Tr. 75). Likewise, Exhibit 2A, the Physical Residual Functional Capacity Assessment, was signed and dated by Cameron. (Tr. 85). However, both Estock and Cameron's signatures appear at the end of each report, suggesting that the findings could be the joint findings of both examiners. (Tr. 76, 87).

State agency consultants are considered experts in issues surrounding Social Security applicants and if supported by the record, their opinions can be given great weight by the ALJ. *See* 20 C.F.R. §§404.1512(b)(8), 404.1527(e)(2)(i), (ii); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (S.S.A.). However, this rule is qualified. The state agency consultant's opinion must be based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment providing more detailed and comprehensive information than what was available to the individual's treating source. (SSR 96-6p). Assuming, *arguendo*, that Cameron was the sole examiner who conducted Plaintiff's physical assessment, her opinion is entitled to little weight, as it was not based on a review of a complete case record. The physical assessment was completed in November 2013, and therefore did not include just under two years of the additional medical records added to the evidentiary record. (Tr. 70-87, 458-474).

Further, mistakenly treating a single decision maker's opinion as that of a medical expert is not harmless error if the ALJ gives significant weight to the opinion. *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 872 (11th Cir. 2012); *see also Graves v. Colvin*, No. 2:12-CV-1054-VEH,

10

2013 WL 5298572 at *4 (Sept. 19, 2013) ("But the findings of non-medical State agency disability are not considered to be opinion evidence at the ALJ level") (citation omitted). If Cameron, a non-medical single decision maker, was in fact alone in conducting the physical assessment of Plaintiff, the ALJ's conclusion that Plaintiff is capable of performing "light" work is ill-founded. Dr. Hutto, the consultative examiner, did not comment on Plaintiff's RFC and merely noted that she has decreased range of motion, motor weakness, a history of extensive prior trauma, and limitations in her gait. (Tr. 457). Thus, taking Plaintiff's argument that substantial evidence suggests that Cameron alone assessed Plaintiff's RFC to be true, the ALJ's conclusion is unsupported by medical evidence.[3]

### B. The Opinion of a Non-Examining State Agency Physician is Not Substantial Evidence to Base an RFC Finding.

Next, Plaintiff contends that even if Exhibits 1A and 2A were also completed and signed by Dr. Estock as a non-examining physician, his opinion does not constitute substantial evidence to support a finding that Plaintiff is not disabled. (Pl. Br., Doc. #8 at 4). Plaintiff argues that this is especially true because Dr. Estock's opinion conflicts with that of Dr. Barnett, the treating physician. (*Id.*).

As a general matter, the opinion of a non-examining, reviewing physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision. *See Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). In *Spencer ex rel. Spencer v. Heckler*, the Eleventh Circuit noted that, "[to] attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at best." 765 F.2d 1090, 1094 (11th Cir. 1985) (internal

---

[3] The court notes that Plaintiff's contention in Section IV. A. is not the only grounds for reversing the ALJ's decision. *See* discussion *infra*, Sections IV. B-D.

quotation omitted); *see also Speegle v. Astrue*, No. 5:11-CV-3247-VEH, 2012 WL 4479727, at *4-5 (N.D.Ala. Sept. 25, 2012) ("…because [the reviewing physician's] non-examining opinions about [Plaintiff's] mental functioning conflict with those examining ones of [the treating physician's], they are entitled to little weight. Additionally, [the reviewing physician's] assessment by itself is insufficient to substantially support the ALJ's disability determination."). This is especially the case when, as here, it appears a non-examining, reviewing physician's opinions are contrary to those of examining physicians. *Spencer,* 765 F.2d at 1094.

Dr. Estock was a non-examining physician who merely reviewed the record and never actually examined Plaintiff. (Tr. 70-74). But Dr. Estock's opinion was plainly contrary to that of Dr. Barnett. If the ALJ had given significant weight to Dr. Barnett's opinion, that would likely have resulted in a finding of disability in conjunction with the VE's findings. (Tr. 87, 474, 55). Thus, on this record, the weight accorded to Dr. Estock's opinion by the ALJ is legal error.[4]

**C. The ALJ Improperly Rejected Dr. Barnett's Opinion and Plaintiff's Testimony.**

    **1. Dr. Barnett's Opinion**

Plaintiff argues that the ALJ erroneously rejected the opinion of Dr. Barnett, the treating physician. (Pl. Br., Doc. #8 at 4). Under the "treating physician rule," a treating physician's opinion is entitled to substantial weight unless good cause is shown to the contrary. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the opinion was conclusory or

---

[4] Further, if Dr. Estock did in fact evaluate Plaintiff's physical impairments, he commented on impairments outside of his specialty. The opinions of medical sources about issues within their area of specialty are entitled to more weight than the opinions of non-specialists. 20 C.F.R. § 404.1527(d)(5). Because Dr. Estock is a psychiatrist and his opinion is in conflict with the opinion of Dr. Barnett, a pain specialist, in the areas of Dr. Estock's specialty, Dr. Estock's opinion is entitled to little weight.

inconsistent with the doctor's own medical records. *Crawford v. Comm'r*, 363 F.3d 1155, 1159-60 (2004); *see also Winschel v. Comm'r*, 631 F.3d 1176, 1179 (11th Cir. 2011).

The ALJ stated that he gave Dr. Barnett's opinion little weight because he found the treating physician assessment was not consistent with treatment records or the report of the consultative physical examiner. (Tr. 21). He also noted that the assessment seemed to have been completed in contemplation of Plaintiff's disability hearing. (*Id.*). However, the record does not reflect that the ALJ had good cause to reject Dr. Barnett's opinion. First, Dr. Barnett's treating physician assessment was consistent with his treatment records. In the assessment, Dr. Barnett noted that Plaintiff suffers from severe pain that would preclude the performance of most activities. (Tr. 474). Throughout her treatment with Dr. Barnett, Plaintiff often stated that her pain was at an eight on a ten-point scale. (Tr. 461, 463, 465, 469). Additionally, Dr. Barnett noted that Plaintiff has restricted range of motion to the right hip and tenderness in her lumbosacral spine, loss of sensation in her left foot, and that she walks with a limp. (Tr. 459, 460). These findings are corroborated by objective radiological data showing numerous fractures from previous trauma and ongoing degenerative conditions. (297-299, 292).

Dr. Barnett's findings are also generally consistent with the report of Dr. Hutto, the consultative physical examiner. While Dr. Hutto did not comment on Plaintiff's ability to perform work-related functions, his impression of Plaintiff included that she has decreased range of motion in multiple joints, particularly in her hips; motor weakness in her bilateral lower extremities; multiple surgical and traumatic scars consistent with her history of extensive prior trauma; muscle defects in her calf muscles; and is unable to walk on her heels and toes and complete a full squat. (Tr. 456-457). These findings lend support to Dr. Barnett's findings. And, while there are minor inconsistencies between Dr. Barnett's and Dr. Hutto's reports, SSR 96-2p instructs that:

> A well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion.

(SSR 96-2p).[5] The two inconsistencies noted by the ALJ between the two physicians' findings are these: (1) Dr. Hutto described Plaintiff's limp as "mild" while Dr. Barnett described it as "significant," and (2) Dr. Hutto found that Plaintiff's sensations were "grossly intact" while Dr. Barnett found that she "loss of sensation in her left foot." (Tr. 456-457, 412, 414-415, 417, 419, 421, 423). These slight differences noted by Dr. Hutto do not rise to the level of substantial evidence in the case record that would contradict or conflict with the treating physician's opinion, especially in light of the many consistencies between the two physician's findings. (SSR 96-2p). Moreover, if anything, because the opinion of a one-time examiner such as Dr. Hutto is not entitled to deference and is thus not substantial evidence standing alone, the balance tips in favor of Dr. Barnett's findings. *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). *See also Kent v. Sullivan*, 788 F. Supp. 541, 544 (N.D. Ala. 1992).

The ALJ's second argument that Dr. Barnett's April 2015 assessment was completed in anticipation of Plaintiff's hearing is not a valid reason for rejecting his opinion. Absent circumstances calling for a different conclusion, the "purpose for which an opinion is provided, is not [alone] a legitimate basis for evaluating the reliability of the report." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998).

### 2. Plaintiff's Testimony

Plaintiff argues that the ALJ erred in rejecting Plaintiff's testimony regarding her subjective complaints of pain in his RFC determination. (Pl. Br., Doc. #8 at 4).

---

[5] SSR 96-2p was rescinded on March 27, 2017, but remains in effect in this case because it was filed before that date. 82 Fed. Reg. 15263 (March 27, 2017).

14

A Plaintiff claiming disabling pain must satisfy the standard adopted by the Eleventh Circuit by showing "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the pain." *Wilson*, 284 F.3d at 1255 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the ALJ determines that Plaintiff has a medically determinable impairment that could reasonably be expected to produce her pain, he must then evaluate the intensity and persistence of Plaintiff's symptoms to determine if they limit her capacity to work. 20 C.F.R. § 404.1529(c)(1).

Here, substantial evidence indicates Plaintiff satisfies the Eleventh Circuit's pain standard. First, evidence of an underlying medical condition is apparent. Dr. Barnett diagnosed Plaintiff with joint pain pelvis, lumbago, pain in limb, and spinal enthesopathy, evidenced by a CT scan of her pelvis showing multiple old fracture deformities with orthopedic postoperative damages. (Tr. 20, 299). Further, the ALJ found that Plaintiff's status post multiple lower extremity fractures with surgical repair, left hip total arthroplasty, lumbar degenerative disc disease, and osteoarthritis are severe impairments. (Tr. 16). The record shows objective medical evidence confirming the severity of Plaintiff's alleged pain. However, objective proof of the pain itself is not required. Rather, a claimant must demonstrate the existence of an impairment that could reasonably be expected to produce pain. *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir. 1991). In this case, Dr. Barnett reported that X-ray/MRI/CT data and sensory deficit or motor disruption support Plaintiff's persistent claims of high pain levels. (Tr. 474).

If the ALJ rejects Plaintiff's testimony regarding her pain, the ALJ must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Further, if proof of disability is based upon subjective evidence and a credibility determination is

critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The reasons for discrediting pain must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 2007). Thus, although the ALJ's "credibility determination does not need to cite 'particular phrases or formulations,'" ... it cannot merely be a broad rejection which is not enough to enable the district court … to conclude that the ALJ considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1562).

The ALJ articulated four explicit reasons for his finding that the "objective and clinical evidence does not fully support limitation to the degree alleged," but, upon careful review, the court finds these reasons are inadequate. The ALJ found that: (1) Dr. Barnett's treatment notes indicate that Plaintiff has received numerous injections and prescriptions that have been somewhat successful in controlling her pain, (2) diagnostic testing has indicated that Plaintiff had no hardware failure or loosening in the left hip; no abnormalities in the right hip; no acute fracture or dislocation of the left femur, knee, tibia, fibula or pelvis; and no evidence of deep vein thrombosis, and thus these objective findings do not establish conditions to produce the symptoms and limitations Plaintiff alleged at the hearing, (3) during ER visits from 2008 to 2012, Plaintiff did not report intractable pain and was not treated for such[6], and (4) Dr. Barnett's treatment notes showing treatment for musculoskeletal pain were the same for a four-year period. (Tr. 21-22).

The ALJ's first rationale -- that Dr. Barnett's numerous treatments of Plaintiff have been somewhat successful – is off the mark. Under SSR-96-7p, which was in effect at the time of the ALJ's decision:

---

[6] As stated earlier, the ALJ's finding that Plaintiff did not report or receive treatment for intractable pain during her ER visits is without support in the record.

> Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.[7]

SSR 96-7p (S.S.A.), 1996 WL 374186. Thus, the numerous injections and prescriptions for narcotic pain medications that Plaintiff received bolster her claim of intense and persistent pain. Further, the ALJ failed to show that these "somewhat successful" treatments were successful enough to restore her ability to work. *See Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1348 (M.D. Fla. 2005). *See also Dunning v. Astrue*, No. 2:11-CV-1487-RDP, 2012 U.S. Dist. LEXIS 129015 at *18 ("While a showing of improvement is an important factor to consider, it is certainly possible for one to be disabled despite showing some improvement.").

The ALJ's second rationale similarly misses the target because an ALJ cannot act as both judge and physician. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). The ALJ's rejection of Dr. Barnett's opinion and reliance solely on the opinions of Cameron and Dr. Estock was unsupported by substantial evidence, particularly in light of the conflict with the treating physician's opinion. As a lay person, the ALJ is "not qualified to interpret raw data in a medical record." *Manso-Pizarro v. Sec. of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996). Thus, the ALJ impermissibly substituted his own judgment for that of a medical professional in determining that Dr. Barnett's findings do not establish conditions to produce the symptoms and limitations that Plaintiff alleged at the hearing.

---

[7] SSR-96-7p has since been superseded by SSR 16-3p, effective March 28, 2016. 81 Fed. Reg. 14166 (March 16, 2016) (revised by 82 Fed. Reg. 49462 (October 25, 2017)).

The ALJ's final rationale is also without merit. Though some of the findings in Dr. Barnett's reports are the same throughout, each entry is clearly individualized. For example, Dr. Barnett's progress note on April 3, 2013 states that, "Ms. Vinson is here today in follow-up regarding back, hip, foot, leg. She is getting a tooth extracted today. She is requesting a lumbar injection today to aid with new issues or concerns. Her pain is rated at 7-8 today, on a scale of 1-10." (Tr. 415). Moreover, consistency in findings over the course of a patient's treatment history does not make the findings non-credible. Rather, "one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR-96-7p. *Cf. Loveless v. Colvin*, 6:14-CV-01773-LSC, 2015 U.S. Dist. LEXIS 163366 at \*24 (N.D. Ala. Dec. 7, 2015) (supporting the ALJ's decision to reject Plaintiff's testimony regarding her symptoms where her statements were *not* consistent) (emphasis added). Therefore, the ALJ's reasons for rejecting Plaintiff's testimony are inadequate and do not satisfy the Eleventh Circuit pain standard.

**D. The ALJ's RFC Findings are Unsupported by Substantial Evidence.**

Finally, Plaintiff contends that by rejecting Plaintiff's testimony and Dr. Barnett's opinion, the ALJ reached his findings regarding Plaintiff's RFC based on his own view on how her injuries should have affected her ability to work. (Pl. Br., Doc. #8 at 13).

The ALJ's decision about Plaintiff's RFC ultimately rests on the opinions of Cameron and Dr. Estock. To be sure, the ALJ gave the opinions "significant weight." (Tr. 21). As stated above, the ALJ erred in according such deference to the DDS examiners. Because the ALJ effectively substituted his own judgment for that of the treating physician, the Commissioner's decision is due to be reversed and remanded.

**VII.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence. The court further finds that proper legal standards were not applied in reaching the ALJ's determination. The Commissioner's final decision is due to be reversed and remanded. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 15, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE